**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**STEPHEN JONATHAN PEREZ,**

       **Plaintiff,**

**-vs-**                                                          **Case No.  6:14-cv-507-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for a period of disability and Disability Insurance Benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability and Disability Insurance benefits on March 21, 2011, alleging an onset of disability until February 1, 2011, due to herniated discs, diabetes (type 2), scoliosis, arthritis and degenerative spine disease, and testicular cancer survivor. R. 26, 69, 150-51, 189-90. His application was denied initially and upon reconsideration. R. 67, 78. Plaintiff requested

a hearing, which was held on August 23, 2012, before Administrative Law Judge Janet Mahon (hereinafter referred to as "ALJ"). R. 36-59. In a decision dated September 22, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 26-35. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on February 7, 2014. R. 4-10. Plaintiff filed this action for judicial review on March 28, 2014. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was born on December 2, 1970 and was 41 years old at the time of the ALJ's decision. R. 34-35, 186. He completed seventh grade (R. 39) and, from 1999 to February 2011, worked as a salesperson for a background investigations, rising to vice president of sales from 2006 to 2011; Plaintiff's annual salary was $55,000. R. 39-40, 180.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of herniated discs, arthritis in the back, diabetes (type 2), scoliosis, degenerative spine disease and testicular cancer survivor. R. 190. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease and rheumatoid arthritis of the hand, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 28, 30. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a restricted range of light work. R. 30.

Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work as a sales agent. R. 34. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an addresser, a parimutuel ticket checker

and an election clerk. R. 54-56. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 35.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by failing to apply the correct legal standards to the opinions of Plaintiff's treating physicians, Drs. Round and Pizarro. Second, Plaintiff contends the ALJ erred by failing to apply the correct legal standards to his medication side effects. Third, Plaintiff contends the ALJ erred by failing to apply the correct legal standards to his hypertension and diabetes limitations. For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Plaintiff's RFC and physician opinions

Plaintiff argues that the ALJ erred by finding he had the RFC to perform light work contrary to the opinions of Drs. Round and Pizarro. The Commissioner contends that the ALJ properly assessed the medical opinions.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The Eleventh Circuit, in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2)*; Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)).

In the ALJ's decision dated September 22, 2012 she gave "little weight" to the opinions of Dr. Round and Dr. Pizarro because she found:

> Although evidence of record shows that Dr. Round and Dr. Pizarro have treated the claimant, the undersigned finds that their opinions are not consistent with the record as a whole, such as Dr. Round's February 16, 2011 treatment notes showing that the claimant was in no acute distress, had good neck range of motion, had normal gait and station, and was alert and oriented times three with normal affect and appropriate conversation, Dr. Kilgus's November 16, 2011 treatment notes showing that the claimant continued to complain of pain affecting his neck, his lower back, and his mid back, but had no symptoms in his upper or lower extremities that would suggest radiculopathy and walked with a good gait with no list to either side, despite tenderness and spasms in his cervical, thoracic, and lumbar spines, and Dr. Torres's treatment notes indicating improvement of the claimant's pain with medication and

>cervical epidural steroid injections, normal mental status examination findings, and no medication side effects (Exhibits 2F, 7F, 8F, 11F, 12F, and 13F).
>
>\* \* \*
>
>In sum, the above residual functional capacity assessment is supported by the medical evidence of record and opinion evidence, such as the opinion of State agency medical consultant Dr. Baltazar that the claimant is able to lift and carry at the light exertional level, sit for a total of about six hours in an eight-hour workday, balance, stoop, kneel, crouch, crawl, and climb occasionally, and have no concentrated exposure to vibration, treatment notes of Dr. Torres indicating that conservative treatment of medication and cervical epidural steroid injections provided some relief of the claimant's pain, the claimant had no medication side effects, and the claimant had decreased pinprick and light touch sensations at the C7 dermatome, L5 dermatome, and C6 dermatome and muscle spasm and tenderness of the right upper back, left upper back, right posterior neck, left posterior neck, right lower back, and left lower back, but a negative Spurling's test, negative straight leg raising, and two out of four brachioradialis, patellar, Achilles, biceps, and triceps reflexes, and the claimant's history of arthritis.

R. 33-34.

Plaintiff argues the ALJ erred in giving "little weight" to the opinions of Drs. Round and Pizarro because she cited records that actually support–not contradict–their opinions and show Plaintiff has a long list of impairments and limitations. Plaintiff contends that the ALJ failed to apply the correct legal standards, failed to establish good cause for rejecting their opinions, and made findings not supported by substantial evidence. The Commissioner argues the ALJ properly assessed the medical opinions of Drs. Round and Pizarro because Plaintiff was treated conservatively, some of the notes reflect Plaintiff's subjective statements, and, while there were diagnoses of certain conditions, these did not indicate a functional limitations precluding work. The Commissioner also argues that Dr. Pizarro is not a treating physician and the ALJ was thus not required to give his any opinion additional weight.

Although Plaintiff characterizes Dr. Pizarro as a treating physician, the Record does not support a finding that he was a treating physician under the Social Security Regulations[1], and

---

[1] The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *McNamee v. Soc. Sec.*

consequently, his opinion need not be given controlling weight. Although Plaintiff testified that he received pain management treatment from Dr. Pizarro because his former pain management doctor, Dr. Legowik, retired and Dr. Pizarro replaced him (R. 49-50), no treatment records signed personally by Dr. Pizarro are in the Record. As the Commissioner points out, the only treatment records in the claim file for Dr. Legowik's practice, Physician's Wellness Center, are signed by Dr. Legowik with no indication that Dr. Pizarro was involved in Plaintiff's treatment. R. 359-61, 364-67. The ALJ was not required to give Dr. Pizarro's opinion the weight due that of a treating physician, since his involvement appears to be the equivalent of a one-time examining physician whose opinions would not be entitled to any special deference or consideration. 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r, Soc. Sec. Admin.*, No. 12-14963, 2013 WL 2097364, at *2 (11th Cir. May 16, 2013) (holding ALJ does not have to defer to opinion of doctor who conducted single examination and who was not a treating doctor); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (same)). Even so, Dr. Pizarro's statement does not really discuss any specific examination findings, although he does list Plaintiff's affected vertebrae, which has objective support in the record from several MRIs, and lists the medications Plaintiff has been prescribed. R. 472-75. The Commissioner acknowledges that Dr. Round is a treating physician, and since his RFC opinion is virtually identical to Dr. Pizarro's, the Court will discuss the ALJ's analysis of Dr. Round's opinion.

Plaintiff contends that the ALJ failed to establish good cause for rejecting Dr. Round's (and Dr. Pizarro's identical) RFC opinion, and made findings not supported by substantial evidence of Plaintiff's limitations. Plaintiff argues that the parts of Dr. Round's February 16, 2011 examination

---

*Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

cited by the ALJ do not "conflict" with his RFC opinion or Dr. Pizarro's. The ALJ cited the February 2011 report as noting Plaintiff "was in no acute distress, had good neck range of motion, had normal gait and station, and was alert and oriented times three with normal affect and appropriate conversation" (R. 33); however, he argues, none of these areas were addressed in the opinions of Drs. Round and Pizarro so there is no real conflict. Plaintiff also argues the February 2011 exam actually supported the opinions of Drs. Round and Pizarro because the notes reflect "pains in lumbar and sciatica and neck," pain at level seven out of ten without medication, pain at level three out of ten with medication, and pain "worse at times especially in back." R. 269. At that time, Dr. Round diagnosed chronic pain syndrome, kidney stone, epistaxis, controlled diabetes, and he opined that Mr. Perez's "[c]ondition is worsening" R. 271. Plaintiff also argues that the ALJ erred in citing the notes of Dr. Kilgus and Dr. Torres as contradictory to the RFC opinion of Dr. Round (and Dr. Pizarro), when their examination notes actually supported Dr. Round's RFC opinion.

Overall, the ALJ seems to have accurately assessed Plaintiff's conditions, especially his lower back, from his alleged onset date (February 2011) up to the time he had the car accident in October 2011; however, it does not appear that the ALJ fully considered the records of Plaintiff's condition after the car accident when he had new injuries to his cervical spine and exacerbated the condition in his lumbar spine.

Plaintiff explained in SSA forms that he had ongoing health issues while working for the background investigations company for twelve years (1999 to 2011), and he stopped working in February 2011 (his alleged onset date) because he was diagnosed with a very large kidney stone; he had to take some time off from work due to the severe pain and numerous doctor appointments, to the point that he required surgery after unsuccessfully trying to pass the kidney stone. R. 180, 190, 269, 271, 273, 327-29. He was then let go from the company because he was "not producing revenue." R. 190. At the hearing, he testified that he was let go for missing work while going to doctor's

-8-

appointments, and he would also miss work when he felt ill from taking certain medications. R. 40-41.

Dr. Round of Osceola Physicians Management, an internal medicine physician, treated Plaintiff from 2006 through 2011 for various conditions: chronic pain after falling down the stairs and injuring his back, diabetes ("DM2"), hypertension, poor sleep, migraines, insomnia, and mild arthritis. R. 268-92, 371. An MRI of Plaintiff's lumbar spine from September 2009 showed mild spondylosis, particularly L5-S1, and L5-S1 moderate central and left central disc herniation. R. 362. After the kidney stone procedure in March 2011, Plaintiff complained to Dr. Round that he had more pain in his back from sciatica, and Dr. Round referred him to a pain management doctor. R. 374.

In April 2011, Plaintiff began seeing Dr. Legowik of Physician's Wellness Center, a pain management physician. Dr. Legowik found Plaintiff had decreased and painful range of motion, tenderness, and positive straight leg raise testing, and he diagnosed degenerative disc disease, lumbago, osteoarthritis, and diabetic neuropathy, chronic pain, sciatica, and uncontrolled gout[2]; he started Plaintiff on Oxycodone. R. 360-64. A lumbar spine MRI from September 2009 in Dr. Legowik's file reported mild spondylosis, particularly L5-S1 and L5-S1 moderate central and left central disc herniation. R. 362. Plaintiff reported back to Dr. Round in June 2011 that Dr. Legowik had seen "bad radiculopathy" on his MRI. R. 360-64, 371-74.

Plaintiff was subsequently in a car accident on October 22, 2011 and, on October 28, 2011, saw a chiropractor, John L. Keelan of Florida Injury Kissimmee, for lumbar radiculopathy, cervical spine and upper thoracic spine sprain/strain, and lumbar spine strain/sprain; his range of motion in the cervical and lumbar spines were restricted with pain in all planes. R. 428. He was prescribed

---

[2]The ALJ noted the medical evidence showed a history of arthritis and complaints of aching in the second and third fingers of Plaintiff's right hand; it is not clear if this is related to Plaintiff's complaints of gout. R. 29 (Ex. 2F).

physical therapy consisting of electrical muscle stimulation, heat therapy, traction therapy, massage, and chiropractic manipulations. R. 428.

In November 2011, Plaintiff saw Dr. Kilgus, the Medical Director at Florida Injury Kissimmee, for a follow up examination. R. 424. Plaintiff continued to complain of pain affecting his neck as well as his lower back and mid back, without symptoms in his upper or lower extremities that would suggest a radiculopathy, but he had tenderness and spasms in his cervical, thoracic, and lumbar spines; Dr. Kilgus ordered an MRI of the lumbar spine. R. 424. The November 2011 MRI showed a central disk herniation at L5-S1 and bulging annulus abutting the ventral thecal sac and mild bilateral foraminal encroachment at L4-L5. R. 425. Dr. Kilgus did not order an MRI of Plaintiff's cervical spine, though he noted Plaintiff's cervical spine complaints. R. 424.

By January 2012, Plaintiff began seeing Dr. Torres, a pain management specialist, in consultation with Dr. Kilgus for low back pain, neck pain, thoracic back pain, and leg pain, which he reported was a 7 out of 10. R. 440. Plaintiff told Dr. Torres that he had previously experienced low back pain since a slip and fall in 2002 caused a lumbar herniated disc, but the low back pain was controlled by medication; however, the motor vehicle accident on October 22, 2011 caused neck pain that radiated to both arms, headaches, and increased his low back pain causing it to radiate to both legs, with a new symptom of numbness in both legs, worse when sitting, standing or walking, worse at night and worse in the morning. R. 440, 446, 450, 463, 467. Dr. Torres noted muscle spasms, tenderness, decreased reflexes, decreased sensation, and decreased range of motion. R. 441, 447, 451, 464, 468. Plaintiff's cervical range of motion showed decreased flexion and extension without pain, and other exam results were normal. R. 442. Dr. Torres also noted the (previously mentioned) post-accident lumbar spine MRI from November 2011 showed central disk herniation at L5-S1 with bulging annulus at L4-5. R. 442. Dr. Torres diagnosed cervical radiculitis, cervical sprain/strain, cervicalgia, and low back pain, lumbar IVD without myelopathy, lumbar radiculitis and lumbar

sprain/strain. R. 442, 447, 451, 464, 468. Plaintiff was prescribed Oxycodone and Percocet for pain, and Dr. Torres ordered an MRI of the cervical spine. R. 442.

The February 2012 MRI of Plaintiff's cervical spine showed straightening of the cervical spine suggesting underlying muscular spasm; congenital narrowing of the spinal canal on the basis of short pedicles; midline posterior disk herniation at C2-C3; disk bulge and superimposed right-sided posterior disk herniation and associated radial tear at C4-C5; disk bulging at C5-C6; broad based posterior disk herniation and associated radial tear at C6-C7; and approximation of the ventral spinal cord at C6-C7. R. 434. At the March 2012 appointment, Plaintiff reported to Dr. Torres that he had a decrease in pain with the first cervical epidural steroid injection, and he was going forward with the second one on March 22, 2012. R. 463-65. There is no record of the third epidural being administered, and Plaintiff testified that "the last time [he] had it, they hit a nerve." R. 41.

Dr. Round opined in August 2012 that Plaintiff could stand and walk less than two hours in an eight-hour day; must alternate sitting and standing; is limited in pushing, pulling, climbing, balancing, kneeling, crouching, crawling stooping; is limited in reaching, handling, fingering and feeling; has limitations in seeing; is limited in attention and concentration due to pain, medications, and depression; and has environmental limitations. R. 401-04, 476-79. (Dr. Pizarro opined in July 2012 that Plaintiff had the identical restrictions as opined by Dr. Round. R. 472-79).

Plaintiff's hearing was held on August 23, 2012, and he testified that his back impairment caused pain and numbness, and discomfort when sitting and standing for long periods; his neck impairment caused loss of feeling and numbness in his arms and hands; his high blood pressure caused migraines and his diabetes caused light-headedness, nausea, and headaches; he had arthritis in his hands that caused aching, pains, and discomfort, and he had difficulty opening, gripping, and holding things. R. 46-52. The vocational expert testified that if Plaintiff were able to sit, stand, and

walk only two hours in an eight hour workday – as Dr. Round opined in his RFC assessment– then Plaintiff would be unable to work. R. 56.

It appears from reviewing the Record as a whole that, although Dr. Kilgus noted tenderness and spasms in the cervical, thoracic, and lumbar regions of Plaintiff's spine, he failed to fully address Plaintiff's complaints of cervical spine pain when he treated Plaintiff (the single time) in February 2012, about four months after the October 2011 car accident, when the other conservative treatment prescribed by the chiropractor was not effective.  The ALJ relied on the treatment notes of Dr. Kilgus in finding Plaintiff's allegations "not fully credible." R. 31.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated

reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In finding Plaintiff's allegations "not fully credible," (R. 31), the ALJ relied in part on Dr. Kilgus' somewhat cursory examination of Plaintiff which failed to delve deeper into Plaintiff's neck pain complaints. The ALJ accurately summarized the examination notes made by Dr. Kilgus:

> [D]uring a follow-up examination of the claimant on November 16, 2011,William J. Kilgus, M.D. of Florida Injury Kissimmee, L.L.C. noted that the claimant continued to complain of pain affecting his neck, low, back, and mid back, but had no symptoms in his upper or lower extremities suggesting a radiculopathy (Exhibit 8F). On examination, Dr. Kilgus noted that the claimant had tenderness and spasms in the cervical, thoracic, and lumbar regions of his spine, but was in no acute distress, walked with a good gait, and did not list to either side when standing (Exhibit 8F).

R. 31. However, when the ALJ continued her analysis of Plaintiff's credibility in discussing Dr. Torres' notes, she fails to cite the findings on the cervical spine MRI that Dr. Torres ordered. Once Plaintiff began treatment with Dr. Torres for his back and neck pain, and Dr. Torres ordered the cervical spine MRI in February 2012, he found that Plaintiff had straightening of the cervical spine suggesting underlying muscular spasm; congenital narrowing of the spinal canal on the basis of short pedicles; midline posterior disk herniation at C2-C3; disk bulge and superimposed right-sided posterior disk herniation and associated radial tear at C4-C5; disk bulging at C5-C6; broad based posterior disk herniation and associated radial tear at C6-C7; and approximation of the ventral spinal cord at C6-C7. R. 434. While the ALJ's findings concerning Plaintiff's lumbar pain before the October 2011 car accident were accurate – consistent with his statement to Dr. Torres that he had had lumbar pain since a fall in 2001 but controlled it with medication (R. 440) – the ALJ erred in failing to recognize Plaintiff's post-accident development of cervical spine/neck pain and exacerbated lumbar

-13-

spine pain. The ALJ's omission or lack of discussion of the February 2012 cervical spine MRI as ordered by Dr. Torres is a notable omission.

In addition, the ALJ erred in finding Plaintiff's pain would be made better with epidural treatments. The ALJ states that "Dr. Torres noted that the claimant reported a pain level of five on a scale of one to 10 and decreased pain with his first cervical epidural steroid injection," but neglects to mention that Plaintiff stopped the epidural treatments when the second one in a series of three hit a nerve (R. 41), thus the epidural injections were no longer a viable treatment for his cervical pain. The ALJ erred. in assessing Plaintiff credibility and allegations of pain by omitting the February 2012 cervical MRI results and in ignoring Plaintiff's testimony that Plaintiff's epidural shots had ceased when the second one hit a nerve.

### B.  Plaintiff's other arguments

Plaintiff argues that the ALJ failed to properly consider the side effects of the two different doses of opiate narcotic medications he takes, in light of his testimony that medications caused side effects of feeling ill (R. 41, 49), and notes in the medical records showing that he complained of adverse drug reaction, dizziness, lightheadedness, sleepiness during the day, difficulty sleeping at night, and difficulty concentrating due to medications. R. 43, 52, 284-89, 403, 474.  The Social Security Regulations require the ALJ to "consider… the type, dosage, effectiveness and side effects of any medication you take or have taken." 20 C.F.R. § 404.1529(c)(3)(iv).

Here, the ALJ found that Dr. Torres' records showed Plaintiff had no complaints about side effects of medication (R. 32-33); however, Dr. Torres' later records, closer in time to the hearing, do not state he Plaintiff had "no side effects." R. 446, 450. On remand, the ALJ will obtain updated records from Plaintiff's physicians and address whether Plaintiff suffers from side effects from medication.

Plaintiff also argues that the ALJ erred in failing to include Plaintiff's hypertension and diabetes limitations in the RFC and in the hypothetical to the VE. Plaintiff testified that his high blood pressure caused migraines and diabetes caused light-headedness, nausea, and headaches. R. 47-48. His medical records show a history of diabetes and hypertension, diabetic neuropathy, migraines, dizziness, and numbness and tingling. R. 260, 263, 268, 270-82, 288, 364, 440-41, 446-47, 450-51, 463, 467-68. Plaintiff argues that the omission of diabetes and hypertension from his RFC led the ALJ to conclude that he could actually balance, stoop, climb, and walk for long periods. The Commissioner argues that some of the cited records are not from the relevant period and medical records indicate Plaintiff's diabetes was controlled with medication. However, the records also note that Plaintiff was having eye problems and was recommended to see an eye specialist due to the diabetes (R. 263) and other records state he was diagnosed him with keratoconus, an eye condition. R. 474. On remand, the ALJ will further address whether Plaintiff's hypertension or diabetes caused additional limitations which should be included in the RFC.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on May , 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record